# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**BILLEY C. FOLEY,**
**Claimant Below, Petitioner**

**FILED**
May 5, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)     No. 16-0386** (BOR Appeal No. 2050864)
                        (Claim No. 2014030230)

**PINNACLE MINING COMPANY, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Billey C. Foley, by Reginald D. Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Pinnacle Mining Company, LLC, by H. Dill Battle III, its attorney, filed a timely response.

The issue on appeal is the appropriate amount of a permanent partial disability award to be granted to Mr. Foley as a result of the compensable injury in this claim. This appeal originated from the October 28, 2014, claims administrator's decision granting a 1% permanent partial disability award. In its October 14, 2015, Order, the Workers' Compensation Office of Judges affirmed the decision. The Board of Review's Final Order dated March 24, 2016, affirmed the Order of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Billey C. Foley, a coal miner, was injured in the course of his employment on April 10, 2014, when he attempted to lift and move a belt machine by himself. An MRI taken on April 24, 2014, revealed Mr. Foley tore a right biceps tendon, resulting in a right distal biceps rupture. S. Brett Whitfield, M.D., performed surgery to repair the right distal biceps rupture on May 5, 2014. Mr. Foley has undergone three independent medical evaluations to evaluate the degree of permanent impairment arising from the compensable injury.

1

On September 14, 2014, Mr. Foley underwent an independent medical evaluation performed by Jerry Scott, M.D. Dr. Scott diagnosed a distal biceps tendon rupture with a tear of the biceps belly and a flexor carpi radialis tear. Dr. Scott determined Mr. Foley had reached maximum medical improvement and could return to work with no restrictions. Dr. Scott took range of motion measurements of Mr. Foley's elbows and assessed 2% upper extremity impairment. This converted to 1% whole person impairment, which was his final recommendation. The claims administrator granted Mr. Foley a 1% permanent partial disability award based on Dr. Scott's report.

On October 21, 2014, Mr. Foley returned to Dr. Whitfield for a post-surgery follow-up. Dr. Whitfield noted that range of motion for the right elbow was full with supination and with resisted elbow flexion. Motor strength was normal. Dr. Whitfield opined that Mr. Foley could return to work without any restrictions. He advised Mr. Foley that his injured arm would be sore with use from time to time.

On February 3, 2015, Mr. Foley underwent an independent medical evaluation performed by Bruce Guberman, M.D. Dr. Guberman noted that Mr. Foley complained of constant pain, stiffness, warmth, and occasional swelling of the right arm. Dr. Guberman took range of motion measurements. He also noted there was some weakness in Mr. Foley's grip strength, which was measured with a Jamar dynamometer. Dr. Guberman assessed 2% upper extremity impairment for the range of motion in the flexion and extension at the right elbow. He added 1% for supination and pronation of the elbow. For loss of grip strength, Dr. Guberman assessed 14% impairment, which converted to 10% whole person impairment. Combining the ratings, Dr. Guberman concluded Mr. Foley had 13% upper extremity impairment which converted to 8% whole person impairment.

Finally, Mr. Foley underwent an independent medical evaluation performed by Syam Stoll, M.D., on July 21, 2015. Dr. Stoll noted that Mr. Foley complained of pain and numbness in the injured right arm. Dr. Stoll took range of motion measurements and noted that Mr. Foley had full active range of motion of the shoulder with external and internal rotation as well as abduction and adduction. Range of motion measurements were also taken for the right elbow. In testing for grip strength in Mr. Foley's right hand, Dr. Stoll used a Jamar dynamometer and found that in almost all tests, Mr. Foley's strength was greater in the injured right upper extremity than in the left. Dr. Stoll determined that Mr. Foley's subjective complaints of right hand weakness were unrelated to the compensable injury and assessed 1% whole person impairment due to range of motion deficit. Dr. Stoll ended his report by commenting on some inaccuracies and inconsistencies in Dr. Guberman's report. Dr. Stoll found that Mr. Foley's injured right arm was actually stronger than the uninjured arm, the exact opposite finding of Dr. Guberman. Additionally, Dr. Guberman failed to mention in his report the positions at which he was testing grip strength, information crucial to the reliability of the measurements. Dr. Stoll also noted that Dr. Guberman assessed 14% impairment for loss of grip strength, a percentage that is uncommonly high. Dr. Guberman attributed the loss of grip strength to the compensable injury, however, anatomically, the biceps and flexor carpi radialis do not aid in grip strength. Further, the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed.

1993) do not assign large roles to strength measurements because the contributors believe more research is needed before loss of grip strength is given a larger role in the impairment evaluation. Dr. Stoll opined that Dr. Guberman was incorrect to assign such a large impairment to loss of grip strength. Finally, Dr. Stoll noted some inconsistencies in Mr. Foley's account of how much the belt weighed. Mr. Whitfield noted the equipment weighed 150 pounds, while Dr. Guberman noted it weighed 300 pounds. Mr. Foley advised Dr. Stoll that the equipment weighed 250 pounds. Mr. Foley claimed to have lifted the belt with only his right hand. Dr. Stoll indicated this was not plausible as it would be the equivalent of being able to deadlift 500 pounds with both hands and Mr. Foley did not appear to have these capabilities.

The Office of Judges affirmed the claims administrator's decision on October 14, 2015. The Office of Judges found that a preponderance of the evidence supports affirming a 1% permanent partial disability award. It noted that Dr. Guberman's findings were not supported by any other doctor, including Mr. Foley's treating physician. The Office of Judges stated that if Dr. Guberman's report was to be believed, Mr. Foley would have suffered a tremendous decrease in function between his post-surgery follow-up appointment with Dr. Whitfield and the independent medical evaluation with Dr. Guberman. Equally surprising would be the fact that Mr. Foley seemed to fully recover by the time Dr. Stoll examined him five months later. The Office of Judges determined Dr. Guberman's report was not as reliable as the opinions of Dr. Stoll and Dr. Scott, both of whom recommended 1% whole person impairment. Accordingly, the Office of Judges affirmed the claims administrator's decision granting a 1% permanent partial disability award. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 24, 2016.

We agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Dr. Whitfield and two of the evaluating physicians noted that Mr. Foley appears well-healed and able to return to work without any restrictions. Dr. Guberman produced impairment ratings that have not been found by any other physician. Both Dr. Scott and Dr. Stoll assessed a 1% impairment rating, which is supported by the medical evidence of record.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 5, 2017**


**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4